UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA CASTRO,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 07-0756 JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On June 21, 2007, Sandra Castro ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Disability Insurance Benefits and Supplemental Security Income benefits. On July 5, 2007, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On July 9, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on January 22, 2008, defendant filed an Answer to the Complaint. On April 8, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

///

**BACKGROUND**

On November 10, 2004, plaintiff protectively filed applications for disability insurance benefits and supplemental security income benefits. (See Administrative Record ["AR"] at 12; see also AR at 55). In her applications, plaintiff alleged a disability onset date of May 19, 2003 due to major depression. (See AR at 12, 42, 48, 55, 68, 209). The Commissioner denied plaintiff's applications for benefits both initially and upon reconsideration. (AR at 42, 48). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 12, 54; see AR at 35-36).

On October 24, 2006, the ALJ conducted a hearing in San Bernardino, California. (See AR at 191-210). Plaintiff appeared at the hearing with counsel and testified.[1] (AR at 194-99, 204-06). A medical expert, Joseph Malancharuvil, M.D., and a vocational expert, Stephen Berry, also testified at the hearing. (AR at 199-204, 206-09). Thereafter, on November 6, 2006, the ALJ issued his decision denying benefits to plaintiff. (AR at 9-18). The ALJ determined that plaintiff's affective disorder constituted a severe impairment, but found that plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (See AR at 14-15). Although plaintiff's affective disorder could reasonably be expected to cause the symptoms alleged, the ALJ discredited plaintiff's subjective complaints regarding the intensity, persistence and limiting effects of the symptoms as not entirely credible, citing plaintiff's poor compliance with taking her medication and a good response to medication adjustment with decreased symptoms. (AR at 15-16). The ALJ concluded that plaintiff's physical residual functional capacity was unrestricted, but her mental residual functional capacity was limited to tasks involving up to three or four steps of instructions that are not fast-paced (i.e., assembly line) and are in a habituated setting. (AR at 15). Further, plaintiff cannot work in an environment with emotionally charged personal interactions, work around hazardous machinery such as a forklift, or be responsible for safety operations. (Id.). The ALJ also

---

[1] Plaintiff chose not to proceed with the assistance of an interpreter at the hearing. (AR at 193-94).

determined that plaintiff can speak English and can read and write simple words in English. (AR at 15). Given plaintiff's mental residual functional capacity, the ALJ concluded that plaintiff could no longer perform her past relevant work as a dock worker. (AR at 16). However, based on the vocational expert's testimony that a claimant with plaintiff's mental limitations could perform the unskilled, medium exertional level occupations of dining room attendant, food service worker and packager, the ALJ concluded that plaintiff could successfully adjust to other jobs existing in significant numbers in the national economy. (AR at 17). Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. (AR at 12, 18). The Appeals Council denied plaintiff's request for review of the ALJ's decision on April 23, 2007. (AR at 4-6).

Thereafter, plaintiff filed her complaint in the United States District Court.

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to properly consider relevant substantial medical evidence in the record.

2. The ALJ failed to properly consider plaintiff's subjective complaints and assess plaintiff's credibility.

3. The ALJ erred in failing to consider the fact that plaintiff was 60 years old when he determined that plaintiff is capable of performing unskilled jobs existing in the national economy.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.      The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Parra, 481 F.3d at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Id.

///

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.     The ALJ's Consideration of Plaintiff's Age**

In his decision, the ALJ found that while plaintiff's physical residual functional capacity was unrestricted. Mentally, however, the ALJ found that plaintiff could perform tasks involving up to three or four steps of instructions that are not fast-paced and are in a habituated setting, plaintiff could not perform work in an environment with emotionally charged personal interactions, work around hazardous machinery, or be responsible for safety operations, and plaintiff could speak English and read and write simple words in English. (AR at 15). Given plaintiff's mental residual functional capacity, the ALJ concluded that plaintiff could no longer perform her past relevant work as a dock worker. (AR at 16). The ALJ noted that plaintiff was 56-years-old on the alleged disability onset date and, thus, was considered an "individual of advanced age." (AR at 17). The ALJ also noted that plaintiff had a limited education and that transferability of job skills was not an issue because plaintiff's past relevant work was unskilled. (Id.). The ALJ then relied on the hearing testimony of the vocational expert in concluding that plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (AR at 17-18). Thus, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. (AR at 12, 18).

Plaintiff argues that the ALJ erred when he determined that plaintiff could perform work that exists in significant numbers in the national economy. (Joint Stipulation at 13-14). In particular, plaintiff alleges that the ALJ failed to consider the fact that plaintiff was 60-years-old at the time of the hearing and at the time the ALJ determined that plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Joint Stipulation at 14).

The ALJ denied plaintiff's application for benefits at step five of the sequential disability evaluation. Step five requires that the ALJ consider a claimant's residual functional capacity and vocational profile, including age, education, and work experience, to determine whether the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see id. §§ 404.1520(g), 416.920(g) ("Your impairment(s) must prevent you from making an adjustment to any other work. (1) If we find that you cannot do your past relevant work because you have a severe impairment(s) (or you do not have any past relevant work), we will consider the same residual functional capacity assessment we made under paragraph (e) of this section, together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work."); Parra, 481 F.3d at 746 ("[T]he burden shifts to the Commissioner at the fifth step to show that the claimant may perform other gainful activity."); Lounsburry, 468 F.3d at 1114; Hoffman v. Heckler, 785 F.2d 1423, 1424-25 (9th Cir. 1986) ("Where . . . the claimant establishes her inability to perform her previous work, the burden shifts to the Secretary to show that the claimant can do less demanding substantial gainful work which exists in the national economy. The Secretary must consider the claimant's age, education and background in determining whether the claimant can do other work.") (citations omitted). The ALJ can meet the burden of showing that there is other work in "significant numbers" in the national economy that the claimant can perform by either referring to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, or by taking the testimony of a vocational expert. Lounsburry, 468 F.3d at 1114 (quoting Tackett v. Apfel, 180 F.3d 1094, 1098-1099, 1101 (9th Cir. 1999)); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

Here, the ALJ used Section 204 of the medical-vocational guidelines ("Section 204") as a framework for deciding whether plaintiff was disabled. (See AR at 17). Section 204, which governs disability determinations with respect to claimants whose residual functional capacity permits them to perform work at any physical exertional level, provides:

> The residual functional capacity to perform heavy work or very
> heavy work includes the functional capability for work at the

> lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work (or very heavy work) ordinarily will not have a severe impairment or will be able to do their past work – either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work (or very heavy work). Thus an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

20 C.F.R. Part 404, Subpt. P, App. 2 § 204.00. Thus, the ALJ noted that Section 204 would direct a finding of "not disabled" if plaintiff "had the mental capacity to perform all or substantially all of the requirements of work at any exertional level." (AR at 17).

Because he determined that plaintiff had solely nonexertional limitations,[2] however, the ALJ elicited the testimony of a vocational expert "[t]o determine the extent to which [plaintiff's] mental limitations erode the unskilled occupational base." (See AR at 17). At the October 24, 2006 hearing, the ALJ posed the following hypothetical to the vocational expert to determine whether plaintiff could perform her past relevant work, which the vocational expert had identified

---

[2] Non-exertional (not strength related) limitations include mental, sensory, postural, manipulative, and environmental limitations. See 20 C.F.R. Part. 404, Subpt. P, App. 2 § 200.00(e); Derosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 579 (9th Cir. 1988). In contrast, an exertional impairment primarily limits the plaintiff's strength to sit, stand, walk, carry, lift, push, or pull. See Cooper v. Sullivan, 880 F.2d 1152, 1156 (9th Cir. 1989) ("The Secretary has defined 'exertional activity' as primarily involving the strength requirements of sitting, standing, walking, lifting, carrying, pushing, and pulling. Thus, an exertional impairment is one that directly affects the claimant's strength.").

as heavy,[3] semi-skilled work:

> If someone has – a marginal education, can speak English, but read only simple words and write even fewer very short, very simple English words, but can speak Spanish and read and write Spanish, and is also limited to doing work involving up to three or four steps of instructions, and a habituated setting with no demands for emotionally charged interaction with other people, and can, can – should not work, do no work around hazardous machinery like a forklift, no safety operations, and no fast paced work such as rapid assembly lines, could someone perform any of the [plaintiff's] prior work?

(AR at 206-07). The vocational expert testified that such an individual could not perform any of plaintiff's prior work, and that there would be no transferrable skills from plaintiff's prior work. (AR at 207). The ALJ then asked the vocational expert if he could "identify some unskilled jobs that could be performed" in the "medium range."[4] (AR at 207). The vocational expert testified that the hypothetical individual could perform positions that exist in both the local and national

---

[3] The DOT also assigns each occupation a strength rating that represents the overall strength requirements that are considered to be important for average, successful work performance. The DOT defines heavy work as:

> Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

Dictionary of Occupational Titles, Fourth Edition, 1991, Appendix C, available at http://www.oalj.dol.gov/libdot.htm (follow "Appendices" hyperlink; then follow "Appendix C: Components of the Definition Trailer " hyperlink). The DOT defines medium work as:

> Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

Id.

[4] See supra n.4.

economies such as a dining room attendant, food service worker and packager, which the vocational expert indicated are all classified as medium, unskilled occupations with a level two Specific Vocational Preparation ("SVP").[5] (AR at 207-08). The ALJ discussed the vocational expert's testimony in his decision and relied on the vocational expert's responses in concluding that plaintiff "is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (AR at 17).

When a claimant, such as plaintiff, is unable to perform past relevant work due to a severe impairment, the claimant's age is a vocational factor that must be considered in determining whether the claimant can make an adjustment to any other work. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1) ("[W]e will consider [your] residual functional capacity assessment . . ., together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work.") (emphasis added); Hoffman, 785 F.2d at 1424-25 ("The Secretary must consider the claimant's age, education and background in determining whether the claimant can do other work.") (emphasis added); see 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (at step five, "we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.") (emphasis added); see also id. §§ 404.1560(c), 416.960(c) ("We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. . . . [At step five], we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors."), 404.1563(a) ("When we decide whether you are disabled

---

[5] The DOT describes the duties and requirements of the numerous occupations that it chronicles and assigns each job a Specific Vocational Preparation ("SVP") level. The SVP is defined as the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. A level two SVP requires "[a]nything beyond short demonstration up to and including 1 month." A level three SVP requires "[o]ver 1 month up to and including 3 months." Dictionary of Occupational Titles, Fourth Edition, 1991, Appendix C, available at http://www.oalj.dol.gov/libdot.htm (follow "Appendices" hyperlink; then follow "Appendix C: Components of the Definition Trailer" hyperlink).

under § 404.1520(g)(1), we will consider your chronological age in combination with your residual functional capacity, education, and work experience."), 416.963(a) (same, with respect to disability determinations under Section 416.920(g)(1)), 404.1566 ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."), 416.966 (same).  Indeed, 20 C.F.R. Section 404.1563(a) states that "[i]n determining the extent to which age affects a person's ability to adjust to other work . . . advancing age [is considered] to be an increasingly limiting factor in the person's ability to make such an adjustment[.]"  See also 20 C.F.R. § 416.963(a) (stating the same).  With respect to individuals of advanced age (age 55 or older), age is considered to significantly affect a person's ability to adjust to other work.  20 C.F.R. §§ 404.1563(e), 416.963(e).

An ALJ must consider age as a factor in determining whether a claimant suffering from solely nonexertional limitations is capable of making a vocational adjustment.  The medical-vocational guidelines do not direct a factual conclusion of disabled or not disabled where a claimant has only nonexertional impairments.  20 C.F.R. Part. 404, Subpt. P, App. 2 § 200.00(e)(1) (stating that the disability determination, where the individual has solely a non-exertional impairment, must be "based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in this appendix 2.").  Social Security Ruling ("SSR")[6] 85-15, 1985 SSR LEXIS 20, provides explanations for the use of the medical-vocational guidelines as a framework for evaluating solely nonexertional impairments. Where no medically determinable impairment limits exertion, SSR 85-15 requires that the ALJ consider two issues: (1) how much the claimant's occupational base (the exertional span from sedentary work through heavy or very heavy work) is reduced by the effects of the nonexertional impairment and (2) whether the claimant can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her

---

[6] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

age, education and work experience. SSR 85-15. If an individual has a large potential occupational base despite a nonexertional impairment, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience. Id. "Whenever vocational resources are used and the decision is adverse to the claimant, the determination or decision will include: (1) citations of examples of occupations/jobs the person can be functionally and vocationally, and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country. Id.

In this case, the Court finds that the ALJ failed to give proper consideration to plaintiff's age before determining that she is capable of making a successful adjustment to other work in the national economy.[7] To determine the extent to which plaintiff's mental limitations eroded her unskilled occupational base, the ALJ states in his decision that he "asked the vocational expert whether jobs exist in the national economy for an individual with [plaintiff's] age, education, work experience, and mental residual functional capacity," and that "given all of these factors," the vocational expert testified that the individual would be able to perform medium, unskilled occupations, such as dining room attendant, food service worker and packager. (AR at 17). However, the transcript of the October 24, 2006 hearing clearly indicates that the questions the ALJ posed to the vocational expert contained no reference whatsoever

---

[7] To the extent plaintiff's assertion that she "has no experience whatsoever in performing the occupations identified by the vocational expert" (Joint Stipulation at 14) suggests an argument that she cannot perform the identified jobs because she has no transferable job skills, the argument fails. The vocational expert testified that plaintiff's prior work as a dock worker was heavy, semi-skilled work, but no skills were transferrable, and identified medium, unskilled occupations that he believed plaintiff could perform. (See AR at 207). Even if plaintiff had acquired skills from her prior work, the Ninth Circuit has held that "[s]kills are not transferable to unskilled work because, by definition, unskilled work requires no skills." Terry v. Sullivan, 903 F.2d 1273, 1277 (9th Cir. 1990). Further, if plaintiff's skills are not transferrable to the unskilled occupations identified by the vocational expert, then plaintiff would be in same position as someone who is unskilled. See id. at 1277 n.8.; 20 C.F.R. §§ 404.1565(a), 416.965(a) ("If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled."); Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000) ("The regulations repeatedly state that, in disability determinations, claimants with a skilled or semi-skilled work history with no transferable skills will be treated the same as those with an unskilled work history."). Accordingly, the ALJ determined that "[t]ransferability of jobs skills is not an issue in this case because [plaintiff's] past relevant work is unskilled[.]"  (AR at 17). See 20 C.F.R. §§ 404.1568, 416.968 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . .  A person does not gain work skills by doing unskilled jobs.").

to plaintiff's age, which was 56 years at the alleged disability onset date and 60 years at the time of the hearing. (AR at 206-08). Indeed, the transcript reflects that plaintiff's age was only mentioned briefly near the beginning of the hearing, when the ALJ asked plaintiff how old she was at that time. (See AR at 196). Contrary to the ALJ's statement in his decision, the ALJ did not ask the vocational expert to consider plaintiff's age as a factor in determining the extent to which plaintiff's limitations reduced her occupational base, and the vocational expert's testimony does not indicate that he considered plaintiff's "advanced" age as a factor in determining that an individual with plaintiff's limitations could perform medium, unskilled occupations including the occupations he identified. Thus, insofar as the ALJ's conclusion that plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" is "[b]ased on the testimony of the vocational expert," the conclusion is not supported by substantial evidence. (See AR at 17). Furthermore, the ALJ's statement that plaintiff was 56 years-old at the alleged disability onset date, which was defined as "an individual of advanced age" (id.), is insufficient to demonstrate consideration of plaintiff's age as a vocational factor in the ALJ's disability determination. See, e.g., Coletta v. Massanari, 163 F. Supp. 2d 1101, 1105 (N.D. Cal. 2001) (stating that, although the ALJ mentioned the claimant's age in his decision, "merely stating 'the existence of fact does not mean it was considered' pursuant to 20 C.F.R. § 404.1563(d)." (quoting Janeway v. Sec'y of Health & Human Servs., 702 F. Supp. 795, 803 (C.D. Cal. 1998) ("Although [claimant's] age was noted in both of the administrative decisions, neither ALJ weighed this factor. Merely alluding to the existence of a fact does not mean it was considered."))). See also 20 C.F.R. § 404.1563(e) ("We consider that at advanced age (age 55 or older) age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60-64)").

C.    **Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would

remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds remand appropriate. The ALJ failed to properly consider plaintiff's advanced age at step five of the sequential disability evaluation.[8] On remand, the ALJ must consider plaintiff's residual functional capacity and complete vocational profile, including her advanced age, to determine whether plaintiff can make an adjustment to other work existing in substantial numbers in the national economy. See C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); see id. §§ 404.1520(g)(1), 416.920(g)(1). In determining whether plaintiff can be expected to make a vocational adjustment, the ALJ should consider whether plaintiff's advanced age, education and work experience constitute extreme adversities warranting departure from the general presumption of nondisability. See SSR 85-15 ("If, despite the nonexertional impairment(s), an individual has a large potential occupational base, he or she would ordinarily not be found disabled in the absence of extreme adversities in age, education, and work experience.") (emphasis added); see also 20 C.F.R. Part 404, Subpt. P, App. 2 § 204.00 ("[A]n impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.") (emphasis added).

///
///
///
///

---

[8] In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to properly consider relevant substantial medical evidence in the record and plaintiff's subjective complaints and assess plaintiff's credibility. As explained above, however, the ALJ's error in failing to give proper consideration to plaintiff's age in determining that she is capable of making a successful adjustment to other work in the national economy constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 12, 2008

                                                    /s/
                                      JENNIFER T. LUM
                                      UNITED STATES MAGISTRATE JUDGE